IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| MELANIE WATERMAN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | Case No. 17-3159 |

OPINION

RICHARD MILLS, United States District Judge:

This suit involves a claim for disability insurance benefits under Sections 216(I) and 223 of the Social Security Act.

Pursuant to 42 U.S.C. § 405(g), the Plaintiff seeks review of a partially favorable decision of the Commissioner.

Both parties seek summary judgment.

I.  BACKGROUND

On February 28, 2017, the Administrative Law Judge (ALJ) found that Plaintiff was disabled and entitled to social security benefits upon turning 50. For the period between July 27, 2015, the alleged onset date, and February 14, 2017, the ALJ found that Plaintiff was not disabled at step five of the sequential evaluation

1

process, and thus not entitled to disability insurance benefits or supplemental security income during that 19-month period.

At steps two and three, the ALJ found that Plaintiff's impairments were severe, but did not meet or medically equal in severity a listed impairment. The ALJ assigned the Plaintiff a residual functional capacity for sedentary work with nonexertional physical and mental limitations.

At step four, the ALJ determined that Plaintiff could not do any past relevant work.

At step five, based on the vocational expert's testimony, the ALJ found that Plaintiff could adjust to other work such as addressing clerk or document preparer.

The Appeals Council denied the Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision.

The issue before the Court is whether benefits should have been awarded back to the Plaintiff's alleged onset date of July 17, 2015. The Plaintiff alleges that back pain and surgery have precluded her from working since then.

## II.  DISCUSSION

A. Standard of review

When, as here, the Appeals Council denies review, the ALJ's decision stands as the final decision of the Commissioner. See Schaaf v. Astrue, 602 F.3d 869, 874 (7th Cir. 2010). The Act specifies that "the findings of the Commissioner of Social

Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Yurt v. Colvin*, 758 F.3d 850, 856 (7th Cir. 2014) (citations omitted). Although a court's task is not to re-weigh evidence or substitute its judgment for that of the ALJ, the ALJ's decision "must provide enough discussion for [the Court] to afford [the Plaintiff] meaningful judicial review and assess the validity of the agency's ultimate conclusion." *Id*. at 856-57. The ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (internal citations and quotation marks omitted).

B. The ALJ's residual functional capacity determination

SSR 96-8p requires that the residual functional capacity assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." The ALJ must also include in her residual functional capacity assessment "a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."

3

(1)

The Plaintiff contends the ALJ's residual functional capacity determination that Plaintiff can do sedentary work is in error because the ALJ did not consider all of the objective evidence. Additionally, the Plaintiff claims her subjective complaints are wholly supported by the consistency of the complaints, the persistence of her complaints and the treatments she sought and that doctors agreed were warranted. The Defendant asserts the ALJ reasonably evaluated the Plaintiff's alleged symptoms and the medical opinion evidence. The Defendant further contends the ALJ's mental residual functional capacity is supported by the record, including the opinions of the consultative medical examiner and the state agency medical consultant.

The Plaintiff notes she underwent a L5-S1 decompressive laminectomy with posterolateral fusion on August 6, 2015. She claims that unlike most who have that surgery, she did not get better but in fact got worse. By December 15, 2015, she was ambulating with a quad cane, had lumbar tightness and was having "moderate to significant" neuropathic pain.

The Plaintiff claims that she tried a number of treatments which provided only limited relief. By August 8, 2016, one year after her surgery, the Plaintiff's diagnosis was changed to "Lumbar post-laminectomy syndrome," which is the persistence of

pain and disability following laminectomy. Laminectomy is a type of back surgery performed to relieve nerve compression or nerve root injury in the spine caused by disc herniation or spinal canal narrowing related to degenerative changes. The Plaintiff was noted to be having intermittent back spasms, lower extremity numbness and "charley horses." She has numbness and tingling in her feet and was unable to sleep on her back or side. Therefore, she had to sleep in her recliner or couch with her back propped up.

The Defendant notes that some of the Plaintiff's arguments concerning "Lumbar post-laminectomy syndrome" are based on evidence that was not before the ALJ. Moreover, certain evidence does not support the Plaintiff's argument. Dr. Gold stated in August 2016 that Plaintiff was "able to tolerate her symptoms fairly well without any pain medication." R. 673. Dr. Gold referenced the Plaintiff's disability claim, which he said "seems reasonable, from the standpoint of her overall condition." However, he also said that "from the standpoint of her lumbar spine, I would recommend she keep her mind open to the possibility of working at a sedentary duty or even light-duty level." R. 673. There is no indication that the Plaintiff's back surgery "failed" and that she needed additional corrective treatment. Dr. Gold stated she could follow up with him "on an as-needed basis."

The ALJ agreed that Plaintiff had serious functional limitations due to pain, as shown by the residual functional capacity finding for a restricted range of

sedentary work. However, the ALJ did not fully accept the Plaintiff's pain complaints.

Much of the record evidence is consistent with the ALJ's findings. A treatment note from July 2016 noted mild tenderness, full range of motion, mild discomfort in the posterior and no neurological problems. Medical images showed little-to-no degenerative change. R. 670. Although the Plaintiff had back and hip pain complaints at an October 2016 appointment, the physical exam had normal results, except for mild-to-moderate nerve pain and a positive Patrick's sign. R. 697. An exam later that month showed mild tenderness and no obvious abnormality on a CT scan. R. 709.

Social Security Ruling 16-3p states that the "intensity, persistence, and limiting effects of many symptoms can be clinically observed and recorded in the medical evidence" and that examples "such as reduced joint motion, muscle spasm, sensory deficit, and motor disruption illustrate findings that may result from, or be associated with, the symptom of pain." The ALJ found, "Many physical examinations showed normal muscle bulk, gait, motor function, reflexes, coordination, and sensation, as well as full range of motion." R. 26. While the medical evidence shows the Plaintiff did experience some pain, it supports a residual functional capacity for sedentary work.

(2)

SSR 96-8p requires the ALJ to discuss the Plaintiff's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis. This means eight hours a day for five days a week or its equivalent. The Plaintiff states that because the individual must be able to perform "substantially all" of the exertional and non-exertional functions required in work at that level, it is necessary to assess the individual's capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work. The Plaintiff alleges the records show a pattern of depression, anxiety, pain, migraines and fatigue due to sleep apnea that despite treatment was never controlled. The Plaintiff claims this shows she would not be able to attend work on a continuing basis. In March 2016, consultative examiner Frank Froman concluded: "She functions very slowly, and on that basis, cannot perform them at a competitive rate." R.578. The Plaintiff states that the ALJ did not consider the Plaintiff's ability to work on a continuing basis.

The ALJ discusses Dr. Froman's evaluation of the Plaintiff, finding that "[w]hile his conclusion that the claimant is limited to simple work with limited social interaction is consistent with and supported by other evidence of record, his conclusion that claimant is unable to work is not so supported." R.28. The ALJ found Dr. Froman's opinion was entitled to partial weight.

The Plaintiff states that the Seventh Circuit has rejected the notion that a residual functional capacity which limits a claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence and pace. *See Yurt v. Colvin*, 758 F.3d 850, 858-59 (7th Cir. 2014). As in *Yurt*, the ALJ here found that Plaintiff had moderate difficulties with regard to concentration, persistence and pace. However, the Plaintiff contends that nothing in the residual functional capacity determination or in the ALJ's hypothetical questions to the vocational expert assured that Plaintiff could perform positions that would require Plaintiff to sit for eight hours in a work day when she has a history of serious back and hip pain and be on task at least 80% of the day.

The ALJ discussed the findings of Kathleen O'Brien, Ph.D., the state agency psychological consultant, who found that Plaintiff had moderate difficulties in maintaining concentration, persistence and pace. The ALJ noted, however, that Dr. O'Brien's bottom-line conclusion was that Plaintiff "has the ability to understand, remember, carry out, and sustain performance of simple routine tasks, complete a normal workday . . . and adapt to changes/stressors associated with simple routine competitive work activities." R.29. The ALJ credited Dr. O'Brien's conclusion that Plaintiff, despite some limitations in concentration, persistence and pace, retained the ability to complete a normal workday.

The ALJ communicated the residual functional capacity finding in a hypothetical to the vocational expert, excluding work performed at a production-rate pace like assembly line work. In response to the inquiry, the vocational expert identified occupations available in significant numbers that fit the question for individuals limited to sedentary work, such as addressing clerk (21,500 jobs), document preparer (16,500 jobs) and laminator (6,500 jobs).

The Plaintiff contends that because the ALJ did not fully account for the Plaintiff's combined mental and physical limitations, her residual functional capacity determination that she can perform sedentary work before age 50 is not supported by substantial evidence. Moreover, the records show that Plaintiff would not be able to sustain work on a continuing basis because of her chronic back and hip pain and depression.

However, the Court finds that the ALJ considered the opinions of Dr. O'Brien and Dr. Froman in determining the Plaintiff's residual functional capacity. In finding that Plaintiff could perform simple, routine and repetitive tasks but not at a production rate pace, the ALJ accounted for those opinions and there is a logical connection between the parts of the opinions that were credited and the residual functional capacity finding. The ALJ also considered Dr. Froman's finding in formulating the hypothetical to the vocational expert. The ALJ's narrative

explanation shows how he drew from the medical opinion evidence with respect to mental impairments and provides the bases for his residual functional capacity.

The same is true with respect to the Plaintiff's physical limitations. The ALJ considered and gave substantial weight to the Plaintiff's subjective complaints. This resulted in a residual functional capacity finding for a restricted range of sedentary work, which resulted in her being found disabled as of February 15, 2017. The ALJ noted the Plaintiff's serious functional limitations due to pain but found that Plaintiff had the residual functional capacity to perform a restricted range of sedentary work prior to February 15, 2017—based on all of the medical evidence. "Sedentary work represents a significantly restricted range of work, and individuals with a maximum sustained work capability limited to sedentary work have very serious functional limitations." 20 C.F.R., Part 404, Subpart P, App. 2, § 200.00.

The Court finds that the ALJ's physical residual functional capacity finding that Plaintiff could perform a restricted range of sedentary work is supported by substantial evidence.

(3)

The Plaintiff contends, however, that the ALJ erred in that her treating physician, Adam Reyburn, M.D., submitted a medical source statement for less than sedentary work. She alleges the record supports the treating doctor's assessment and

states that, with or without the medical source statement, a finding of less than sedentary is warranted.

The regulations then in effect provided that a medical opinion from a "treating source" is entitled to "controlling weight" if it is both "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with" substantial evidence. 20 C.F.R. § 416.927(c)(2). If a treating source opinion is not entitled to controlling weight, the adjudicator considers a number of factors in determining the "weight" given an opinion. 20 C.F.R. § 416.927(c). These factors include the nature and length of the treatment relationship, the source's specialization, supportability, consistency with the record, and other factors such as the source's knowledge of the agency's disability programs. *Id*. An adjudicator must provide "good reasons" for the weight given an opinion upon considering the factors. *See* 20 C.F.R. § 416.927(c)(2). Opinions from examining, nonexamining and other sources are not entitled to special deference and are weighed under the regulatory criteria above.

The ALJ discusses Dr. Reyburn's opinion but finds that the opinion is not well-supported by treatment notes. While stating that the medical records support a finding of some limitations, the ALJ noted that many records show normal muscle bulk, gait, motor function, reflexes, coordination and sensation, as well as full range of motion and negative straight leg raising tests. The ALJ gave Dr. Reyburn's

opinion little weight, finding that the medical evidence does not support that degree of limitation. "The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion." 20 C.F.R. § 404.1527(c)(3). It follows that an opinion which lacks evidence such as medical signs and laboratory findings is entitled to less weight. The Plaintiff has not identified clinical signs from examinations conducted by Dr. Reyburn that support the opinion. The Court concludes that the ALJ reasonably evaluated this medical opinion evidence.

It is also worth noting that Dr. Reyburn's opinion is from February 2017, which is the same month the Plaintiff was found disabled by the ALJ. The opinion does not provide an earlier onset date of disability.

Based on the foregoing, the Court finds that the ALJ did not err in evaluating Dr. Reyburn's opinion.

Ergo, the Plaintiff's motion for summary judgment [d/e 10] is DENIED.

The Defendant's motion for summary judgment [d/e 11] is GRANTED.

The Decision of the Commissioner of Social Security is affirmed.

The Clerk will enter Judgment and terminate this case.

ENTER: March 26, 2019

    FOR THE COURT:

                                                              /s/ *Richard Mills*
                                                              Richard Mills
                                                              United States District Judge